## MAGNUSON v. KELLY, State Com'r of Motor Transportation, et al.

District Court, E. D. Kentucky. December 2, 1927.

Edwin G. Becker, of Cincinnati, Ohio, for plaintiff.

Bradley & Bradley, of Georgetown, Ky., and R. W. Keenon, of Lexington, Ky., for defendants.

Before DENISON and MOORMAN, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This suit is before us on motion for preliminary injunction. It is a three-judge case. The injunction sought is to restrain defendants from interfering with the operation of plaintiff's interstate passenger bus line between Dayton, Ohio, and Lexington, Ky., and threatening to arrest his operatives in its operation. The plaintiff has filed with the defendant commissioner his written application for a certificate of public convenience and necessity, tendering therewith the required license fees and insurance policies under the Act of March 5, 1926, Kentucky Acts 1926, c. 112, Carroll's Kentucky Statutes Supp. 1928, §§ 2739j–1 to 2739j–41, relating to motor transportation for compensation in this state, and his application has been denied. The route specified therein in Ohio extends from Dayton to Cincinnati, passing through five other stations between these points. That in Kentucky extends from Covington through Newport, Alexandria, and Butler, a few miles south of which last-named station it strikes what is known as the Eastern Dixie Highway or United States Federal Highway No. 25, and runs therefrom and thereon through Falmouth, Cynthiana, and Paris to Lexington. The line consists of seven-passenger touring cars, which are to make four trips each way each day. The application set forth the schedule of operation and the fares to be charged.

The application was protested by two bus lines operating over the highway aforesaid, one from Cincinnati to Lexington known as the C. C. C. line, and the other from Cincinnati to Falmouth, known as the Red Dot Coach Line, and by the Southern Railway System, which operates a railroad from Cincinnati to Lexington; they were all competitors. The Red Dot Coach Line was a competitor for interstate business between Cincinnati and Falmouth. The C. C. C. line was a competitor for interstate business between Cincinnati and Lexington and points north of Lexington between that point and the point where plaintiff's route strikes the highway aforesaid, and the Southern Railway System was a competitor for such business between Cincinnati and Lexington. The interests of competitors, therefore, was brought to bear

upon the defendant commissioner in considering the application and taking the action he did. According to the commissioner's record he held that, as the application was "strictly interstate business," he was "forced" to grant the permit, but on account of the congestion in traffic between Lexington and Cincinnati he could only grant plaintiff two round trips daily, instead of the four applied for, and, plaintiff refusing to accept those conditions, that no permit would be granted. There is filed with the answer the original of an undated opinion and order signed by the commissioner, which the answer alleges was entered in and made a part of the original proceedings held by the commissioner at the time plaintiff's application was heard, but no reference thereto is made in the certified copy of the minutes of the commissioner as to the hearing. This document is quite elaborate and stresses the considerations deemed to be against the application. It is to be gathered therefrom that it was the view of the commissioner that there was really no room for plaintiff even for two trips each way each day, and he was constrained to be willing to grant plaintiff a certificate for that many trips because his business was "strictly interstate" and he could not be shut out entirely. Had the commissioner the power to do so, he would have done this. He stated his conclusions thus:

"It is the conclusion of the Commissioner, therefore, that under the facts presented to him, and his personal knowledge and investigation of the existing conditions that it would be detrimental to the public safety for the applicant to be permitted to operate on the schedule proposed; that already the travel on said road is very congested, and that the public transportation companies already granted permits constitute a very heavy burden on same and that any increase in the number of busses running would be a menace and unnecessary, hazardous increase in the danger to the traveling public, both interstate and intrastate. The Commissioner further finds that on account of the nature of its construction and the kind of country through which it runs, the route is particularly dangerous, and requires regulation of this kind, limiting the amount of bus travel on said route; he further finds that already the bus transportation on said route constitutes a very heavy burden on same and required a heavy expense for upkeep on said route; that the heaviest burden on said route is the bus transportation thereon. That any additional permits for bus transportation would unnecessarily increase the wear and tear on said road and would destroy same without any increase in transportation facilities to the public either interstate or intrastate; that the additional fees received from the additional permits would not in any way meet the additional burden of upkeep."

It does not appear therefrom which of the facts thereinbefore recited, on which his conclusions were based, were presented to him and which personally known by him or ascertained by his investigation nor how any facts were presented to him. The law under which he was appointed and acts empowered him to issue subpœnas and compel the attendance of witnesses, and requires persons to testify under oath. There is nothing to indicate that in hearing and disposing of the application he heard any evidence. It would seem that he heard none and acted solely upon statements made to him by interested parties, and upon what he claimed to know or to have ascertained. It appears from the document that he really did not understand the route, covered by plaintiff's application. He acted upon the idea that it followed the highway aforesaid its entire length from Covington to Lexington, whereas it did not follow it from Covington to the point where his route struck that highway south of Butler, which is about one-third of the distance between Covington and Lexington. In the conclusion quoted he said that the operation of any additional bus lines over the road would not only "unnecessarily increase the wear and tear on said road" but "would destroy same." T. O. that the operation of four seven-passenger touring cars for hire four times each way each day would "destroy" the road. He further stated that the operation on this line would not increase the interstate transportation facilities to the public. The only interstate transportation facilities which the public now have is between Cincinnati and Lexington. Plaintiff will afford such facilities between all points on his route in Ohio and north of Cincinnati and all points thereon in Kentucky for which no adequate facilities are now provided.

The bus transportation now in existence set forth in the statement of facts upon which the conclusions reached were based is that by the C. C. C. line which makes 12 trips each way one hour apart each day; that by the Red Dot Line which operates a bus between West Liberty, Ky., and Middletown, Ohio, a point on plaintiff's Ohio route, three times a week each way over the highway aforesaid between Covington and Paris—neither of whom seem concerned about plaintiff's application.

The law under which the defendant commissioner was appointed and acts prohibits transportation of any one by motor vehicle for hire on any public highway in this state without having first obtained, as in this act provided, from the commissioner of motor transportation a certificate declaring that the public convenience and necessity require such operation. It continues: "The commissioner shall have the power to issue to any applicant a certificate of public convenience and necessity, or to refuse to issue the same, or to issue it for the partial exercise only of the privileges sought, and may attach to the exercise of the rights given by such certificate, such terms and conditions as, in his judgment, the public convenience and necessity may require. No such certificate shall be issued by the commissioner until it shall be established to the satisfaction of the commissioner after a proper investigation and hearing that the privilege so sought by the applicant is necessary or convenient for the public, and that the service so proposed to be rendered by the applicant is not being adequately performed at the time of such application by any other person, firm or corporation. The burden of proof shall be on the applicant." Ky. St. Supp. 1928, § 2739j–3.

The act further provides: "If a certificate be granted for service over a regular route or between fixed termini the commissioner shall prescribe the route, territory, schedule, fare or tariff in connection with said service and in all cases may make such other rules and regulations relative to the operation of such vehicles as public convenience and necessity may demand." Section 2739j–9.

And further: "Neither this act nor any provisions thereof shall apply or be construed to apply to commerce with foreign nations or commerce among several states of this Union or business conducted for the United States government, except in so far as the same may be permitted under the Constitution of the United States and the acts of Congress." Section 2739j–19.

The ground upon which the plaintiff seeks the injunction applied for is that the threatened action of the defendant commissioner is in violation of section 8, article 1 of the federal Constitution conferring power on Congress to regulate interstate commerce, and the Fourteenth Amendment. The decisions of the Supreme Court in the cases of Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A. L. R. 286; Bush v. Naley, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627, have settled that the provision of the Motor Transportation Act of this state, in so far as it requires an interstate motor carrier before beginning operation to obtain from the commissioner a certificate of public convenience and necessity, is in violation of the provision of the federal Constitution conferring on Congress power to regulate interstate commerce. The state has no power absolutely or conditionally to deny such a carrier the right to use its public highways. In order that it may use them it is not necessary that a permit to do so be obtained from the state authority. The court said that the primary purpose of such a provision is the "prohibition of competition," and, continuing, it said: "It determines, not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons, while permitting it to others for the same purpose and in the same manner. * * * Its effect upon such [i. e. interstate] commerce is not merely to burden, but to obstruct, it."

The question, however, which this case raises is different from that raised in those cases. For the defendant commissioner concedes the controlling effect of those decisions as to the questions raised there. The question here is not as to the right of an interstate common carrier by motor vehicle to use the public highways of the state at all, but as to the extent to which it may use them. Has the state the power to limit the extent of such use, and, if so, to what extent and how may it exercise such power?

In the case of Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966, it was held that a state may limit the weight of trucks engaged in interstate commerce. But it was recognized that such and like limitations can be exercised only by uniform regulations. The court said:

"In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adopted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens." It said further:

"Of course the state may not discriminate against interstate commerce."

The discrimination had in view is between intrastate and interstate commerce. A state cannot discriminate in favor of intrastate commerce against interstate commerce. No more can a state discriminate between interstate common carriers for hire by motor vehicles. This is what we have here. By the defendant commissioner's prescription the C. C. C. line operates busses, strictly so called;

commissioner characterizes them as "large busses"—12 trips each day, an hour apart, between Cincinnati and Lexington. He denies to plaintiff the right to operate seven-passenger touring cars 4 trips each day each way three hours apart. He is willing that plaintiff shall operate such cars 2 trips each way each day seven hours apart. He bases his denial of the two additional trips a day on the ground that this will seriously affect the safety of travel on the highway and seriously impair the highway. This cannot be accepted. The act contains a provision authorizing an applicant for a certificate of public convenience and necessity, whose application has been refused, to appeal from the decision of the commissioner to the Franklin circuit court for a review thereof. This provision, however, has no application to a case of this sort. The act, as heretofore shown, provides that its provisions have no application except in so far as the same may be permitted under the Constitution of the United States, and, as we have seen, the provision requiring the obtaining of such a certificate so far as applies to one desiring to operate solely in interstate business is null and void and has no application to him.

The plaintiff is entitled to the injunction applied for.

DENNISON and MOORMAN, Circuit Judges, concur.