**WEINIG et al. v. COE, Commissioner of Patents.**

Civil Action No. 16330.

District Court of the United States for the District of Columbia.

Dec. 22, 1943.

Cushman, Darby & Cushman and C. Willard Hayes, all of Washington, D. C., for plaintiffs.

W. W. Cochran, Sol. U. S. Patent Office, of Washington, D. C., for defendant.

BAILEY, Justice.

The parties in this case have entered into a stipulation and agreed upon the following facts:

"1. The plaintiff, Potash Company of America, was the owner of an application of the plaintiff, Weinig, Serial No. 7219, filed February 19, 1935, which application disclosed and claimed an invention relating to Froth Flotation of certain types of ores by the use of certain reagents, described in the specification as derivatives of Lauric acid or Lauryl alcohol' and more specifically 'sodium Lauryl sulphate (or sulphonate) a sodium salt of the half sulphuric ester of primary Lauryl alcohol, or an alkali salt of a sulphonated alcohol.' The said application Serial No. 7219 will be referred to hereinafter as application 'A'.

"2. The plaintiff, Potash Company of America, was also the owner of an application of the plaintiff Weinig, Serial No. 38,-316, filed August 28, 1935 for a Flotation Process for Sylvinite Ores, which application disclosed and claimed an invention relating the use of certain reagents in the flotation process, described in the specification as 'an alkali salt of a sulphated alcohol, or more specifically an alkali salt of a sulphated aliphatic alcohol having from 5 to 14 carbon atoms in the molecule, or still more specifically, sodium Lauryl sulphate or sodium octyl sulphate.' This application Serial No. 38,316 will be referred to hereinafter as application 'B'. The application B also described another invention relating to milling procedure in the separation of valuable constituents from sylvinite ores, with which the case at bar is not concerned.

"3. The reagent described in application A is a species of the generic group of re-

agents described in application B. On September 3, 1935 plaintiff attempted to amend application A to include a description of the aforesaid generic group of reagents and attempted to amend certain claims of application A to cover the same, but the Patent Office eventually refused to permit such amendment and finally rejected in application A, claims to the generic group of reagents. Under settled principles of patent law, claims to the generic group of reagents could not be made in application A which, as filed, disclosed only one species, since a single species will not support a generic claim, in chemical cases.

"4. From the date of filing of application A and continuously until patent No. 2,188,931 was issued thereon, the application contained claims to the species described above in paragraph 1.

"5. Continuously from the date of filing application B until August 11, 1939, application B contained claims to the generic group of reagents described in paragraph 2, at which date those claims were cancelled for transfer to another application, the claims in application B being thereby restricted to other matters relating to milling procedure, with which the case at bar is not concerned.

"6. Before the grant of the patents on applications A and B, an application, hereinafter referred to as application B–1, was filed by plaintiff, Weinig, and assigned to plaintiff, Potash Company of America, Serial No. 317,315, filed February 5, 1940, said application being a continuation-in-part of applications A and B and being directed to the generic group of reagents described in paragraph 2. For the purposes of this case, application B–1 may be considered as a continuation-in-part of application B and the issues involved are the same as though application B were involved in this suit.

"7. On February 13, 1935, one Benjamin R. Harris filed an application Serial No. 6393, hereinafter referred to as application 'C', relating to Ore Dressing, and disclosing the specific reagent of application A and the generic group of reagents of application B.

"8. On December 2, 1935 the Commissioner of Patents declared an interference, No. 71,849, between plaintiff's application A and the Harris application C, having as the issue, a single count directed to the specific reagent of application A.

"9. On or about the 4th of September, 1937, the party Harris filed an abandonment of the contest, and, thereafter, the claim constituting the issue of the interference was allowed to plaintiff in application A.

"10. Claims to the generic group of reagents in the Harris application C were rejected by the Board of Appeals, after the termination of the interference.

"11. Plaintiff did not move to add application B to the interference, nor did the Commissioner of Patents declare an interference between plaintiff's application B and the Harris application C, although both applications contained claims generic to the group of reagents referred to above during the pendency of the interference between applications A and C.

"12. The Board of Appeals rejected in plaintiff's application B–1, claims generic to the group of reagents referred to above solely on the ground of estoppel, based on plaintiff's failure to move to have application B added to the interference, in accordance with the provisions of Patent Office Rule 109."

I think this case is controlled by the cases of International Cellucotton Products Co. v. Coe, 66 App.D.C. 248, 35 F.2d 869, and American Cyanamid Co. v. Coe, 70 App.D.C. 330, 106 F.2d 851, and that the plaintiff is not estopped from making the claims in suit by reason of the provisions of Rule 109 of the Patent Office, 35 U.S.C.A. Appendix, by reason of its failure to move to include the claims in suit in the interference with Harris. I am all the more satisfied that there is no estoppel in this case by reason of the fact that there was no adjudication of priority in that interference but Harris abandoned the contest.

The plaintiff is entitled to a judgment authorizing the Commissioner of Patents to issue to it a patent containing these claims.