GEORGE W. BUSH & SONS COMPANY *v.* MALOY ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION OF MARYLAND.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 185. Argued January 16, 1925.—Decided March 2, 1925.

1. A statute of Maryland, 1922, c. 401, prohibits common carriers of merchandise or freight by motor vehicle from using public highways over specified routes without a permit; requires a commission to investigate the expediency of granting a permit when applied for, and authorizes it to refuse if it deems the granting of the permit prejudicial to the welfare and convenience of the public. *Held* unconstitutional as applied to one desirous of using the highways as a common carrier in exclusively interstate commerce. *Buck* v. *Kuykendall, ante*, p. 307. P. 323.

2. The facts that the highways here in question were not constructed or improved with federal aid, and that refusal of the permit is not mandatory under the statute but in exercise of a broad discretion vested in the commission, do not affect this conclusion. P. 324.

143 Md. 570, reversed.

ERROR to a judgment of the Court of Appeals of Maryland which affirmed a judgment dismissing a bill for an injunction.

*Mr. William L. Rawls* and *Mr. George Weems Williams* for plaintiff in error.

The proprietary interest of the State of Maryland in its highways gives it no power to prohibit their use for the purpose of transporting goods for hire in interstate commerce, where the vehicles employed are such as are freely permitted by the State to be used upon its highways.

The fact that Congress has enacted no legislation affecting or regulating interstate motor transportation does not leave the States free to prohibit such transportation.

By virtue of the commerce clause of the federal Constitution, the right to engage in interstate commerce cannot be denied by any State, and the question as to whether or not the public interest will be promoted by any limitation upon this right is one exclusively for the determination of Congress. *Gibbons v. Ogden,* 9 Wheat. 1; *Pensacola Tel. Co. v. Western Union Co.,* 96 U. S. 9; *Poole v. Electric Ry. Co.,* 88 Md. 533; *Peddicord v. R. Co.,* 34 Md. 463; *Adams Express Co. v. New York,* 232 U. S. 14.

That § 4 of the Act of 1922, was intended to deal with this right to engage in interstate business, and was not concerned with the safety of the public upon the highways, appears not only from the language of the section, but is also clear from the fact that other sections of the article of the Code of Maryland, to which this act was an amendment, namely, Article 36, §§ 133–200, made elaborate and detailed provisions respecting the "rules of the road" and the operation of automobiles thereon.

The only aspect of public safety within the purview of the act, as construed by the Maryland Court of Appeals, is the reduction of the number of motor trucks upon the

highways resulting from the elimination of the trucks of any common carrier whose use are not essential to the needs and convenience of the public. This is but the assertion after all, of the power to determine what the needs and convenience of the public are with respect to interstate transportation, and of the right on the part of the State to exercise a power which has been delegated exclusively to Congress.

When there has been no attempt to restrict by legislation the use of the highways by the public generally, and when they are freely opened to everybody else, it is manifest that whatever may be the power of the State with respect to a carrier engaged in domestic commerce purely, it cannot under such circumstances exclude carriers engaged in interstate commerce solely upon the fragile ground that their exclusion will result in the lessening of the number of vehicles upon the road and will to that extent promote the safety of the traveling public. If common carriers in interstate commerce could be excluded on any such ground when using exactly the same vehicles which are freely permitted upon the highways, then for the same reason the State would have the power to select any other form of interstate commerce and impose the same restrictions upon it, thus giving it control over the whole field of interstate commerce in so far as the use of its highways in that connection is concerned.

It cannot escape notice that the several recent decisions of the state and lower federal courts upon this subject, (*Northern Pacific Ry. Co.* v. *Schoenfeldt,* 123 Wash. 570; *Interstate Motor Transit Co.* v. *Kuykendall,* 284 Fed. 882; *Liberty Highway Co.* v. *Michigan Public Utilities Co.,* 294 Fed. 702; *Interstate Transit Company* v. *Derr et al.,* 228 Pac. 624) in effect concede that there is no peculiar power vested in the States by reason of their mere ownership of their highways; for they all announce that the legislation of the States undertaking to regulate

interstate travel over highways is only sustainable in the absence of regulation by Congress.

The failure of Congress to enact legislation is equivalent to the declaration of freedom from any state interference. *Oklahoma* v. *Kansas National Gas Co.*, 221 U. S. 229.

In a long line of cases this Court has held that a State has no power whatever to require the obtaining of a license from it as a prerequisite to engaging in interstate commerce. *Adams Express Co.* v. *New York, supra; Crutcher* v. *Kentucky,* 141 U. S. 47; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1.

The right to transport goods in accustomed ways, and to use existing instrumentalities for that purpose upon complying with the conditions imposed upon the public generally, is clearly interstate commerce, national in character. Distinguishing *Pennsylvania Gas Co.* v. *Public Service Comm.,* 252 U. S. 23; *Port Richmond & B. P. Ferry Co.* v. *Hudson County,* 234 U. S. 317. See *Sault Ste. Marie* v. *International Transit Co.,* 234 U. S. 333.

*Mr. Thomas H. Robinson,* Attorney General of the State of Maryland, and *Mr. Edward H. Burke,* Assistant Attorney General, for defendants in error.

The State, at the cost of many millions of dollars to the taxpayers, has established a fine system of improved public highways, and is expending millions more in the extension, improvement and maintenance of this system. Some of the public highways over which the plaintiff in error seeks to operate its motor trucks, as instrumentalities of interstate commerce, were built by and are owned by the State, and others are the property of certain counties of the State. The State has declared that certain carriers of passengers, as well as common carriers of merchandise or freight by means of motor vehicles, shall not operate their motor trucks over streets and public highways of the State without permission granted by the Public Service Commission.

Jitney busses and taxi-cabs for the public transportation of passengers, and common carriers of freight and merchandise, are numerous, and all are operating their motor vehicles by the permission of the State. It is common knowledge that large trucks, such as the plaintiff in error proposes to use, are not only dangerous to the persons and property of other users of the road, but are destructive of the highways themselves and interfere a great deal with the convenience of travel.

If the position of the plaintiff in error be sustained, common carriers of freight or passengers by simply incorporating in an adjoining State and confining themselves to interstate commerce would escape all control of the State in matters of vital interest to the people.

The principles controlling in a case like this, where Congress has taken no action with respect to the interstate transportation involved, are stated in *Minnesota Rate Cases,* 230 U. S. 352.

By reason of difference in the character, construction, width and location of roads and the strength of bridges in the various States, it appears doubtful if any general system or uniformity of regulation could be adopted, and as the matter admits of such "diversity of treatment according to the special requirements of local conditions," it has been left with the States until Congress sees fit to act. *Hendrick* v. *Maryland,* 235 U. S. 610, and *Kane* v. *State,* 242 U. S. 160, support our contention.

That there is a necessity for regulation is evidenced by the fact that no less than thirty-one States of the Union have enacted statutes on the subject.

The question, therefore, narrows itself into one of reasonableness *vel non* of the Maryland statute.

The right asserted by the plaintiff in error is not the right of travel over the highway in the customary and ordinary way, but the privilege of making the highway itself a place of business. It is this special and extraor-

42684°—25——21

dinary use of the highway that the statute is designed to regulate.　In *ex parte Dickey,* 76 W. Va. 576; *Schoenfeld* v. *Seattle,* 265 Fed. 726; *Nolen* v. *Riechman,* 225 Fed. 812; *State* v. *Darazza,* (Conn.) 118 Atl. 81; *Gizzarelli* v. *Presbrey,* (R. I.) 117 Atl. 359.

The Maryland Act, recognizing that "the movement of motor vehicles over the highways is attended by constant and serious danger to the public, and is also abnormally destructive of the ways themselves", was designed, as found by the Court of Appeals, "to restrict to the needs of the public the number of motor vehicles used in the transportation of freight or merchandise upon any one route and thereby avoid the additional injury and damage to the roads or highways, and the danger to persons traveling thereon, that would result from the use of a greater number than the needs and convenience of the public require."

The public for whose protection the Maryland statute was passed are all those who use the highways in the exercise of the right to travel over them which is common to all and which is freely accorded to all alike by the State, whether engaged in intrastate or interstate commerce. The Act, therefore, in so far as it assures and protects the common and ordinary right of citizens of other States in the use of the highways, so far from unreasonably restricting and forbidding interstate commerce, is in aid of such commerce. The width of the road, the character of its construction, the strength of the bridges, the amount of ordinary and customary travel on the road, the special and extraordinary uses to which it may have already been subjected, are all circumstances to be taken into consideration in determining whether or not an additional burden upon the road by way of a freight motor bus line is "prejudicial to the welfare and convenience of the public."

There must be some limitation upon such rights as are asserted by the plaintiff in error in this case. To make

the exercise of such rights depend upon the welfare and convenience of the public and to restrict or deny them if their exercise be prejudicial to such welfare and convenience, is both reasonable and necessary. *Crutcher* v. *Kentucky,* 141 U. S. 47, and *Adams Express Co.* v. *New York,* 232 U. S. 14, distinguished.

Neither by the Act of 1922 nor by the order of the Commission complained of is it required that the plaintiff in error shall obtain a permit from the Commission as a condition of carrying on interstate commerce. Neither the Act nor the order imposes any direct or indirect burden or restriction upon the plaintiff's right to engage in interstate commerce.

The only effect of the order is that it cannot operate its trucks over the highways of the State as it has done and proposes to continue to do. Neither the Act nor the order is a commercial regulation.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

A statute of Maryland prohibits common carriers of merchandise or freight by motor vehicle from using the public highways over specified routes without a permit. The Public Service Commission is charged with the duty to "investigate the expediency of granting said permit" when applied for; and it is authorized to refuse the same if it "deems the granting of such permit prejudicial to the welfare and convenience of the public." Laws of Maryland, 1922, c. 401, § 4.

George W. Bush & Sons Co. applied for a permit to do an exclusively interstate business as a common carrier of freight over specified routes, alleging its willingness and intention to comply with all applicable regulations concerning the operation of motor vehicles. After due hearing the permit was denied. This suit was brought in a court of the State to restrain the state officials from inter-

fering with such use of the company's trucks. The bill alleged, and it was admitted by demurrer, that the highways were not unduly congested; that they are so constructed that they can carry burdens heavier than that which would be imposed by plaintiff's trucks; that the operation of its trucks would impose no different burden upon the highways than the operation of the trucks of the same kind and character by private persons, which was freely permitted; and that, in refusing the permit, the Commission had considered merely "whether or not existing lines of transportation would be benefited or prejudiced and in this way the public interest affected." The plaintiff claimed that, regardless of permit, it was entitled to use the highways as a common carrier in exclusively interstate commerce. The trial court dismissed the bill. Its decree was affirmed by the highest court of the State. 143 Md. 570. The case is here on writ of error under § 237 of the Judicial Code.

This case presents two features which were not present in *Buck v. Kuykendall, ante,* p. 307, decided this day. The first is that the highways here in question were not constructed or improved with federal aid. This difference does not prevent the application of the rule declared in the *Buck Case.* The federal-aid legislation is of significance, not because of the aid given by the United States for the construction of particular highways, but because those acts make clear the purpose of Congress that state highways shall be open to interstate commerce. The second feature is that here the permit was refused by the Commission, not in obedience to a mandatory provision of the state statute, but in the exercise, in a proper manner, of the broad discretion vested in it. This difference also is not of legal significance in this connection. The state action in the *Buck Case* was held to be unconstitutional, not because the statute prescribed an arbitrary test for the granting of permits, or because the Director of

Public Works had exercised the power conferred arbitrarily or unreasonably, but because the statute as construed and applied invaded a field reserved by the Commerce Clause for federal regulation.

*Reversed.*

The separate opinion of Mr. Justice McReynolds, delivered in this case and the one immediately preceding it, *ante,* p. 307.

I am of opinion that the courts below reached correct conclusions in these causes.

The States have spent enormous sums in constructing roads and must continue to maintain and protect them at great cost if they are to remain fit for travel.

The problems arising out of the sudden increase of motor vehicles present extraordinary difficulties. As yet nobody definitely knows what should be done. Manifestly, the exigency cannot be met through uniform rules laid down by Congress.

Interstate commerce has been greatly aided—amazingly facilitated, indeed—through legislation and expenditures by the States. The challenged statutes do not discriminate against such commerce, do not seriously impede it, and indicate an honest purpose to promote the best interests of all by preventing unnecessary destruction and keeping the ways fit for maximum service.

The Federal Government has not and cannot undertake precise regulations. Control by the States must continue, otherwise chaotic conditions will quickly develop. The problems are essentially local, and should be left with the local authorities unless and until something is done which really tends to obstruct the free flow of commercial intercourse.

The situation is similar to the one growing out of the necessity for harbor regulations. State statutes concerning pilotage, for example, have been upheld although they

amounted to regulation of interstate and foreign commerce. "They fall within that class of powers which may be exercised by the States until Congress has seen fit to act upon the subject." *Olsen* v. *Smith,* 195 U. S. 332, 341.