## HI–BALL TRANSIT CO. v. RAILROAD COMMISSION OF TEXAS et al.

District Court, N. D. Texas, Dallas Division.
June 19, 1928.

No. 3199—457.

1. **Courts ☞101—Hearing before three judges on application for interlocutory injunction held not to require trial before three judges.**

Hearing before three judges on petition for interlocutory injunction *held* not to require trial before three judges, unless application for interlocutory injunction is pressed to determination.

2. **Commerce ☞62—Statute providing for state's regulation of transportation on highways held unconstitutional, when applied to interstate commerce (Acts Tex. 40th Leg. [1927], c. 270, §§ 3, 5, 7).**

Acts Tex. 40th Leg. (1927) c. 270, §§ 3, 5, and 7, relative to state's regulation of transportation facilities by motor common carriers on highways, *held* unconstitutional, in so far as it applies to interstate commerce; jurisdiction over such commerce being vested in national government.

3. **Commerce ☞13—Railroad Commission has authority over intrastate business of carrying passengers over highways (Acts Tex. 40th Leg. [1927] c. 270, §§ 3, 7).**

State Railroad Commission has authority over intrastate business of carrying passengers over highways under Acts Tex. 40th Leg. (1927) c. 270, §§ 3, 7, relative to regulation of motor common carriers of passengers over highways.

In Equity. Suit by the Hi-Ball Transit Company against the Railroad Commission of Texas and others. Bill dismissed without prejudice.

J. M. Hayes, of Oklahoma City, Okl., and Edward C. Meek, of Dallas, Tex., for plaintiff.

D. A. Simmons and H. Grady Chandler, Asst. Attys. Gen., for defendants.

ATWELL, District Judge. This suit was instituted early in March, 1928, by the plaintiff, a copartnership, composed of two gentlemen alleged to reside in the state of California. The bill is rather generally drawn, but alleges, in substance, that the copartnership is operating a line of motor busses for the carriage of passengers, interstate, from California, Arizona, New Mexico, and Texas to a terminus at Dallas, Tex., and from Dallas on into Oklahoma, Missouri, and ultimately to Chicago; that the railroad commission of Texas, which is given power by an act of the Legislature to grant certificates of "convenience and necessity" to prospective motor common carriers of passengers, acting under sections 3 and 7 of the state law (Acts Tex. 40th Leg. [1927] c. 270), refuses to grant a permit to plaintiff, and threatens

arrest of plaintiff's drivers in and by the county authorities in Texas in the counties through which it is alleged their automobiles, in the conduct of such interstate passenger business, will of necessity be compelled to pass, and that such state law is unconstitutional.

A preliminary restraining order, a temporary injunction, and a permanent injunction are prayed. The defendants maintain the constitutionality of the law mentioned, and assert it to be their duty and province to supervise, under the police power of the state, the conduct of such business as is contemplated by the plaintiff. At a hearing before three judges, at New Orleans, Circuit Judge FOSTER, District Judge DAWKINS, and the writer, a rule was entered giving the defendant 30 days more in which to consider the application of the plaintiff.

[1] On this day, by agreement of all parties, the case is taken up on the merits for final solution, the defendants presenting an objection to the jurisdiction, on the ground that the hearing before the three judges requires this trial to be before three judges. The act of 1925 (28 USCA § 380), if read loosely, does seem to leave that impression; but the Supreme Court, in Smith v. Wilson, 273 U. S. 388, 47 S. Ct. 385, 71 L. Ed. 699, held that it did not so mean, unless the application for an interlocutory injunction had been pressed to a determination; the reason, then, being patent that it would look wrong to permit one judge, upon a final hearing, to undo what three judges had done upon a preliminary hearing.

A great deal of testimony has been admitted, including the opinion of the Railroad Commission. This testimony and this opinion clearly evidence the view of the commission, notwithstanding its disclaimer, in its amended answer, of any authority to grant a "certificate of convenience and necessity" to an interstate carrier, that it has such authority.

[2] Section 3 of the act of 1927 is as follows:

"It is hereby declared that when existing transportation facilities on any highway in this state do not provide passenger service which the commission shall deem adequate to provide for public convenience on such highway, then such inadequacy of service shall be considered as creating a condition wherein the public convenience and necessity require the designation of, and provision for, additional service on such highway, and it shall be the duty of the commission to issue certificate or certificates as herein provided, if in the opinion of said commission the issuance of such certificate will promote the public welfare."

Section 7 of the same act is as follows:

"* * * In determining whether or not a certificate should be issued, the commission shall give weight and due regard to (1) probable permanence and quality of the service offered by the applicant; (2) the financial ability and responsibility of the applicant and its organization and personnel; (3) the character of vehicles and the character and location of depots or termini proposed to be used; and (4) the experience of the applicant in the transportation of passengers and the character of the bond or insurance proposed to be given to insure the protection of its passengers and the public. * * *"

The first part of section 5 has the following provision:

"No motorbus company shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire over the public highways of this state without first having obtained from the commission under the provisions of this act a certificate or permit declaring that the public convenience and necessity require such operation."

That such regulation by a state is entirely unconstitutional, when sought to be applied to interstate commerce, is not on open question. Discussion was foreclosed at an early date, because the fundamental law of the nation, which is the supreme law of the land, vests jurisdiction over such commerce in the national government.

That the motor age has dawned does not change the law, and, beginning with Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286, wherein Mr. Justice Brandeis, for the court, said: "Thus, the provision of the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden but to obstruct it. Such state action is forbidden by the commerce clause. It also defeats the purpose of Congress expressed in the legislation giving federal aid for the construction of interstate highways"—down through Bush v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627; Interstate Busses Corporation v. Holyoke Street Railway Co. et al., 273 U. S. 45, 47 S. Ct. 298, 71 L. Ed. 530; Interstate Busses Corporation v. Blodgett, Tax Commissioner of Conn., et al. (February 20, 1928) 48 S. Ct. 230, 72 L. Ed. ——; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, and Sprout v. City of South Bend, Indiana, May 14th, 1928, 48

S. Ct. 502, 72 L. Ed. ——, which treat of similar cases from the states of Washington, Ohio, Connecticut, Maryland, Massachusetts, and Indiana, there has been a consistent maintenance of the supremacy of the nation over such interstate traffic.

Manifestly the purpose of sections 3 and 7 of the Texas act is to allow the Railroad Commission to determine, not the use of the state's highways, but the persons by whom such highways may be used, prohibiting use to some and permitting their use to others, and to determine what facilities are adequate, as well as to determine the financial ability, etc., of the persons so engaged. All such regulations by the state are unconstitutional.

In this country there is no financial test of one's right to engage in business. The poor man has the same right as the rich man. The driver of one car, who maintains a schedule and drives it within the lawful limits, and preserves the proper guaranties in the way of insurance for his passengers, etc., has as much right to enjoy the highways into and through the states in passing from state to state, as does the man with $1,000,-000 and with 1,000 cars. To hold otherwise would be to fix a money rule, which is not lawful.

[3] It has developed, however, during the presentment of the testimony, that grave doubt has been raised as to whether the plaintiff confined its carrying of passengers to those who were traveling interstate. So much doubt is raised by the testimony that it would be unsafe to grant the relief prayed for. The Railroad Commission has as undoubted authority over intrastate business as has the nation over interstate business. This court would have no more jurisdiction to order the commission in the intrastate field than does the commission have in the other field. See Sanger v. Lukens (D. C.) 24 F.(2d) 226.

Because of such situation, the bill will be dismissed without prejudice to again seek relief, if and when the coming of new conditions shall warrant.