**PHILLIPS et al. v. MOULTON et al.**

No. 382.

District Court, D. Rhode Island.

Dec. 8, 1931.

Peter W. McKiernan, of Providence, R. I., for complainants.

Clifton I. Munroe, of Providence, R. I., for Board of Public Safety for City of Providence.

Sigmund W. Fischer, Jr., 2nd Asst. Atty. Gen., for Public Utilities Commission of State of Rhode Island.

Before ANDERSON, Circuit Judge, and MORTON and LETTS, District Judges.

LETTS, District Judge.

This is a bill in equity wherein four parties join as complainants against the members of the board of public safety for the city of Providence and the members of the public utilities commission for the state of Rhode Island. There is named also as party respondent the chief of police of the city of Providence.

The complainants are severally engaged in the interstate carriage of passengers for hire between the city of Providence and various points in the states of Massachusetts and Connecticut. They together operate some twenty vehicles, properly licensed by the state of Rhode Island. These vehicles are ordinary Cadillac and Pierce-Arrow passenger cars with some readaptation of the seating arrangement to increase their capacity.

Each of the complainants has complied with the requirements of chapter 254 of the General Laws of Rhode Island 1923, in filing with the public utilities commission schedules setting forth the routes into the city and terminal for discharging and taking on passengers. These routes and the terminal now used were approved by the public utilities commission and a certificate issued to each complainant in accordance with section 3 of said chapter, the commission recognizing that it has no jurisdiction to refuse a certificate to one about to engage in interstate commerce. Said chapter 254 provides, in part, as follows:

"Sec. 2. Every person, association or corporation owning or operating a jitney is hereby declared a common carrier and subject as such to the jurisdiction of the public utilities commission, and while so operating to such reasonable rules and regulations as said commission may prescribe with respect to routes, fares, speed, schedules, continuity of service, and the convenience and safety of passengers and the public.

"Sec. 3. No person, association or corporation shall operate a jitney until the owner thereof shall have obtained a certificate from the public utilities commission specifying the route over which such jitney may operate, the number of passengers which it may carry at any one time, and the service to be furnished and that public convenience and necessity require its operation over such route. Such certificate shall be issued only after written application for the same has been made by the owner of such jitney. No such certificate shall be issued to any person who is not a citizen resident within this state,

nor to any association unless all the members of such association are citizens resident within this state, nor to any corporation unless such corporation has been created by a special act of the general assembly upon petition for the same, the pendency of which petition shall be notified in such manner as the general assembly may by general law or special act prescribe. * * *

"Sec. 12. Each section of this chapter and every part of each section are hereby declared to be independent sections; and the holding of any section or sections, or part or parts thereof, to be void, ineffective or unconstitutional for any cause, shall not be deemed to affect any other section or part thereof."

In respect to each complainant the route which was thus approved by the commission in 1926 included an entry upon the northerly end of Eddy street and a left turn upon a short section of Worcester street, at which point passengers were taken on and discharged. At this terminal point the complainants have had no waiting room or station but merely took on and discharged passengers at this definite point on the public street. This location is in a busy downtown section and adjoins the principal hotel in the city. It is undisputed that the complainants operating from this terminus and over the routes in question have built up a substantial business in the interstate carriage of passengers.

In the spring of 1931 the General Assembly passed an act creating the board of public safety for the city of Providence (Laws 1931, c. 1710), the members of which are herein named respondents. Under the terms of this act, this board, among other duties, took over the management and direction of certain departments of the municipal government, including that of the police commission of the city and the public service engineer. The former police commission had in 1926 given its approval to the action of the public utilities commission in approving the routes and terminus used by the complainants. Shortly, however, after the new board of public safety assumed its duties, it petitioned the public utilities commission "to require all jitney operators now having routes or terminals involving operation in Eddy Street, between Washington and Fountain Streets; Worcester Street; Washington Street, between Eddy and Union Streets; and Union Street, between Washington and Fountain Streets, to submit revised routes and termini which eliminate such operation within a reasonable period."

Following a hearing given to the operators of the busses and jitneys affected, the public utilities commission, under date of August 28, 1931, entered an order, the material part of which is as follows: "That Roy C. Farnum, I. C. T. Company, Inc., New England Transportation Company, Bessie Phillips, (Arrow Line), Ida Trostonoff, (Arrow Line) and Harold Turner, holding certificates for bus operation out of a terminal at the corner of Worcester and Eddy Streets, over a route from West Exchange Street to Eddy Street to Worcester Street to Dorrance Street, be each and all required to present to this Commission on or before October 15, 1931, for approval, such amendments to their respective routes and termini, as will eliminate the use of Eddy and Worcester Streets and any terminus thereon, and to cease operation through said streets on and after November 1, 1931."

It also appears that the board of public safety, acting upon its own initiative, independent of the public utilities commission and prior to the entry of the aforementioned order, imposed upon the complainants restrictions as to the length of time that their vehicles would be permitted to stop at the Worcester street terminus. While this restriction, as evidenced by the formal communication of the board, restricted the complainants to a ten-minute stop, there is evidence which strongly suggests that the board, acting through its uniformed police officers, did, for a period at least, enforce much more drastic requirements. There was no evidence, however, that any unreasonable annoyances of this character had been persisted in to the time of this hearing.

The complainants contend, that their status and right to operate over the present routes should in no way be affected either by the petition of the board to the public utilities commission or by its direct action in undertaking to limit the period that their vehicles may stop at the terminus because of the alleged unconstitutionality of the legislation under which the board of public safety was created.

The relief asked is, therefore, directed not only to the public utilities commission because of its order, but also against the board of public safety, and is as follows: "That said Court issue a preliminary injunction, directed against the defendants enjoining and restraining them, their agents and servants and subordinates from moving said plaintiffs from their terminal on Worcester Street in said Providence and from interfer-

ing with the operation by the said plaintiffs of their own lines in their operation in interstate commerce over and upon the streets in the City of Providence and from further interfering and meddling with the business of the plaintiffs in any way."

There is conflicting testimony as to the extent of the traffic congestion on the sections of Eddy and Worcester streets from which it is desired to remove the operations of the complainants. By them it is contended that, due to the withdrawal from that locality of many busses of the large commercial type and due to the improved handling of traffic in that locality, there exists no public necessity or convenience requiring the removal of the complainants' vehicles commensurate with the business losses which they would suffer.

The grounds upon which the public utilities commission bases its order of removal need not here be restated. These reasons are set forth at length in the order filed by the commission, a copy of which is before us. It is sufficient to observe that a review of the grounds stated indicate no such unreasonable or whimsical basis for the action as to justify this court in reviewing or reversing the findings of fact.

The issues here presented, in so far as they involve the board of public safety, are easily determined. The action of the police officers, to which exception has been taken, has not been shown to be continuing in character nor anything more than isolated instances of police interference. The record does not support the conclusion that their action was either intended to, or did, amount to an interference with interstate commerce.

The board has interceded, by way of petition, with the utilities commission to influence it to assert its authority to remove the complainants from the use of their present terminus and certain of the streets upon which their vehicles now enter. It is conceded, however, that this board has no ultimate authority in the matter and no power to compel the utilities commission to act, nor to veto such action as that body decides upon. In this respect the board occupies no different legal status and exercises no legal authority beyond that possessed by any other body of citizens. The considerations, therefore, which have been urged in support of the contention that the legislation creating the board of public safety is unconstitutional raises only a moot question, upon which this court will not pass.

The only other issue remaining is whether the complainants, being engaged exclusively in interstate commerce, shall be required to comply with the order of the public utilities commission. We are here dealing with a regulation of interstate commerce in respect to which Congress has not acted. The assertion of authority by the state is prompted by local traffic conditions and in the interests of public convenience. While neither the state nor municipal authorities could, in furtherance of such a purpose, bar the entrance and exit from the city of complainants' vehicles, nor could they impose conditions as to routes and termini so exacting as to destroy the complainants' business, they may in furtherance of such an end impose regulations which are reasonable. Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286. Such regulations, though they may entail some degree of inconvenience or interference, will not be regarded as a direct and unlawful burden upon interstate commerce. The reasonableness of such regulations, as applied to motor vehicles, must be judged with a proper regard to the safety and convenience of the public, in view of local conditions on the one hand, and the necessities of those engaged in interstate transportation upon the other.

In the case of Sprout v. City of South Bend, 277 U. S. 163, 169, 48 S. Ct. 502, 504, 72 L. Ed. 833, 62 A. L. R. 45, the court said: "It is true that, in the absence of federal legislation covering the subject, the state may impose, even upon vehicles using the highways exclusively in interstate commerce, nondiscriminatory regulations for the purpose of insuring the public safety and convenience; that licensing or registration of busses is a measure appropriate to that end; and that a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded. * * * These powers may also be exercised by a city if authorized to do so by appropriate legislation. * * * Such regulations rest for their validity upon the same basis as do state inspection laws. * * *" See also Newport Electric Corp. v. Oakley, 47 R. I. 19, 129 A. 613; Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Cannon Ball Transp. Co. v. Util. Comm., 113 Ohio St. 565, 149 N. E. 713.

In the case of Michigan Public Utilities Commission v. Duke, 266 U. S. 570, at page

577, 45 S. Ct. 191, 193, 69 L. Ed. 445, 36 A. L. R. 1105, the court said: " * * * But it is well settled that a state has no power to fetter the right to carry on interstate commerce within its borders by the imposition of conditions or regulations which are unnecessary and pass beyond the bounds of what is reasonable and suitable for the proper exercise of its powers in the field that belongs to it. * * * "

In the present case there is apparent in the order of the public utilities commission no discrimination as between carriers, nor intent upon its part to impose unfair or unreasonable conditions. On the contrary, the attitude which has been manifested by the commission has been one of cooperation and reasonableness. It is observed, however, that while the order which the commission has entered specifically directs the cessation by the complainants of operation upon the routes now utilized, the procedure outlined in the order provides no assurance for the acceptance or approval of new routes and termini prior to the date fixed for such discontinuance. The reasonableness of the regulation proposed under the order here in question can only be appraised by the reasonableness of the substituted routes and termini to which the commission will give its approval. Assuming that the complainants will themselves cooperate by submitting reasonable proposals for substituted routes, the commission may not bar them from the use of their present routes and termini without giving its approval to others that are reasonable and adequate.

The prayer for injunction is now denied, but, to the end of affording proper protection to complainants' rights, the bill of complaint is not dismissed, and this court will, at any time within one year from the date hereof, consider the application of any of the parties complainant to reopen if sufficient showing be made that reasonable substituted routes and termini are not approved.