# United States Court of Appeals

## For the First Circuit

No. 03-2542

WALGREEN CO., WALGREEN OF SAN PATRICIO, AND
WALGREEN OF PUERTO RICO,

Plaintiffs, Appellants,

v.

JOHN V. RULLAN,
SECRETARY OF THE PUERTO RICO HEALTH DEPARTMENT,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

Henry C. Dinger, P.C., with whom Stephen D. Poss, P.C. and
Goodwin Procter, LLP were on brief, for appellants.
Camelia Fernández-Romeu, with whom Roberto J. Sánchez-Ramos,
Puerto Rico Department of Justice, Office of the Solicitor General,
was on brief, for appellee.

April 22, 2005

**HOWARD**, **Circuit Judge**.    Walgreen Co., Walgreen of San Patricio, and Walgreen of Puerto Rico (collectively, Walgreen) sued John V. Rullan, the Secretary of the Puerto Rico Health Department (Secretary), under 42 U.S.C. § 1983, challenging the constitutionality of a Commonwealth of Puerto Rico statute requiring that all pharmacies seeking to open or relocate within the Commonwealth obtain a "certificate of necessity and convenience."  24 L.P.R.A. § 334 et. seq.  Walgreen asserts that this statute is unconstitutional because it impermissibly discriminates against or excessively burdens interstate commerce and violates due process.  The district court rejected these arguments.  Because we conclude that the statute impermissibly discriminates against interstate commerce, we reverse.

## I. Background

In 1974, Congress passed the National Health Planning and Resources Development Act.  See Pub. L. No. 93-641, 88 Stat. 2225 (1975).  This statute was designed to correct perceived imperfections in the health care market.  Among its goals, the statute was intended to restrict skyrocketing health care costs and prevent the unnecessary duplication of services.  See Patrick John McGinley, Beyond Health Care Reform: Reconsidering Certificate of Need Laws in a Managed Competition System, 23 Fla. St. U. L. Rev. 141, 154-55 (1995).

To achieve these goals, Congress, _inter alia_, conditioned the states' receipt of certain federal funds on the enactment of "certificate of need programs."  Under these programs, the states reviewed proposed health care facility construction projects and permitted projects to proceed only after a demonstration of sufficient need for the services.[1]  _See_ _generally_ Lauretta H. Wolfson, _State Regulation of Health Facility Planning: The Economic Theory and Political Realities of Certificates of Need_, 4 DePaul J. Health Care L. 261 (2001).

In 1975, Puerto Rico (which is treated as a state for present purposes) responded to the federal initiative by enacting a "certificate of need" law.  24 L.P.R.A. §§ 334 _et_ _seq._ (the Act).  The Act provided that no person may "acquire or construct a health facility . . . without having first obtained a certificate of necessity and convenience granted by the Secretary."  _Id._ § 334a.  The Act defined a certificate of necessity and convenience as a

> document issued by the Secretary of Health authorizing a person to carry out any of the activities covered by [the Act], certifying that the same is necessary for the population it is to serve and that it will not unduly affect the existing services, thus contributing to the orderly and adequate

---

[1]One of the purposes of encouraging states to enact certificate of need programs was to limit the excessive construction of health care facilities by physician-owned investments.  Because physicians could prescribe the use of these newly-constructed facilities, Congress postulated that doctors were ordering unnecessary, expensive procedures to create artificial demand for their investments.  _See_ McGinley, _supra_ at 154-55.

development of health services in Puerto Rico.

Id. at § 334(e).  The Act identified "health facilities" required to obtain a certificate, id. § 334(d), provided criteria for granting a certificate, id. § 334b, permitted the Secretary to promulgate additional certificate criteria, id. §334j, and established administrative and judicial review procedures governing the certificate review process, id. §§ 334f-2 to 334f-14.

As originally enacted in 1975, the Act did not apply to pharmacies.  Four years later, the Puerto Rico legislature amended the definition of "health care facilities" to include pharmacies. See Law No. 189 of July 29, 1979, amending 24 L.P.R.A. §§ 334 et seq.  This amendment, inter alia, provided that any pharmacy in existence on October 24, 1979 was exempt from the certificate requirement.  See  24 L.P.R.A. § 334g.  When the amendment was enacted, over ninety-two percent of pharmacies operating in Puerto Rico were locally-owned concerns.  There is no legislative history surrounding the enactment of the amendment, but the Secretary asserts that the purpose of the amendment was to encourage the location of pharmacies in underserved areas of Puerto Rico.  Puerto Rico is the only jurisdiction that has applied its certificate of need law to pharmacies.

Twelve years after its enactment, Congress repealed the National Health Planning and Resources Development Act.  Pub. L. No. 99-60, 100 Stat. 3743 (1986).  While several states followed

-4-

suit by repealing their certificate of need laws, Puerto Rico's remains in effect.

As mentioned above, the Act provides detailed procedures for the certificate approval process. The process begins with a proposed pharmacy submitting a letter advising the Health Department of its intention to file a certificate request. Within thirty days of sending this letter, the proposed pharmacy must file the formal certificate application. See 24 L.P.R.A. § 334f-3.

After the Secretary receives the application, he publishes a notice in a widely read newspaper announcing the request. See id. § 334f-6. He also notifies all "affected persons" by mail. See Regulation of the Secretary of Health No. 56, art. IV § 2(b) (1980) ("Regulation No. 56"). Among the "affected persons" are existing pharmacies located within one mile of the proposed pharmacy site. These entities then have the right to oppose the granting of a certificate to the proposed pharmacy provided that they give written notice of their opposition to the Secretary and proposed pharmacy within 15 days. Id.

Once the notification process is complete, the Secretary almost always issues the certificate if no one objects. See infra at n.3. But if there is opposition from an "affected person," which the Secretary acknowledges is, without exception, an existing pharmacy located within one mile of the proposed pharmacy site, the Secretary assigns the case to the Health Department's Hearings

Division for an administrative hearing. The hearing is often delayed to permit the parties time for discovery. At the hearing, the parties present, _inter_ _alia_, expert testimony concerning the expected impact that the proposed pharmacy will have on competition in the local area. At the conclusion of the hearing, the parties submit proposed findings of fact and conclusions of law. The hearing officer then forwards a recommendation to the Secretary for final action.

In making his final determination, the Secretary considers various statutory criteria, including:

> (1) the relationship between the transaction for which the certificate is requested, and the long-term service development plan, if any, of the petitioner;
>
> (2) the present and projected need of the population which will be affected by the proposed transaction of the services to be provided thereby;
>
> (3) the existence of alternatives to the transaction for which the certificate is requested, or the possibility of providing the proposed services in a more efficient or less costly manner than that proposed by the petitioner; and
>
> (4) the relationship between the health system operating in the area and the proposed transaction.

24 L.P.R.A. § 334b. In addition, the Secretary considers other criteria, established by regulation, including whether the proposed pharmacy will benefit certain "unattended populations" (e.g., low-

income, disabled, or elderly populations) and whether the proposed pharmacy will be located in an area that is already "saturated" by existing pharmacies. Regulation No. 56, art. V. § 1(f) & art. VI § 13(2).

After the Secretary rules on the certificate request, the losing party may ask for reconsideration. See 24 L.P.R.A. § 334f-10. The losing party may also seek judicial review in the Puerto Rico Circuit Court of Appeals and eventually in the Puerto Rico Supreme Court. See id. Typically, the judicial review process takes in excess of a year to conclude, and the Secretary's decision is often stayed during this period. Thus, even if the certificate is ultimately granted, the entire administrative and judicial process usually takes several years to complete.

## II. **The District Court Opinion**

In the district court, Walgreen claimed that the Act, as applied to retail pharmacies, is invalid because it discriminates against or excessively burdens interstate commerce. After filing cross motions for summary judgment, the parties agreed to try the case on affidavits, depositions, and exhibits.[2] In a published

---

[2]The parties state that, by asking the court to decide the case on the paper record, they "waived" trial. This is an inaccurate description of the procedure. By submitting the paper record and asking the court to make findings of fact and conclusions of law based on these materials, the parties consented to a trial on a stipulated record. See, e.g., AIDS Action Comm. v. MBTA, 42 F.3d 1, 5 (1st Cir. 1994).

opinion, the district court rejected Walgreen's claims.  See Walgreen Co. v. Rullan, 292 F. Supp. 2d 298 (D.P.R. 2003).

The district court rejected Walgreen's discrimination argument because the Act requires "any local economic interest seeking to obtain a [certificate to] jump through the same bureaucratic hoops" as an out-of-Commonwealth entity and thus treats all "newcomers" evenhandedly.  Id. at 313.  The court also declined to find discrimination, even though all existing pharmacies were exempt when the Act was amended to include pharmacies, because "the statute made no distinction between local and national pharmacies." Id. at 315.  After concluding that the Act was non-discriminatory, the court determined that the Act did not excessively burden commerce.  See id. at 316-17.  The court ruled that the Act imposes minimal burdens on interstate commerce because it does not prohibit out-of-Commonwealth pharmacies from entering the Puerto Rico market. See id.  The court also recognized the Act's legitimate purpose of encouraging pharmacies to locate in underserved areas of Puerto Rico, though recognizing that Walgreen presented a "solid case" that the Act was not helping the Commonwealth achieve this goal.  Id. at 310, 317-18.  Thus, the court held that "[g]iven the Act's modest burden on interstate commerce," the "burden is clearly [not] excessive in relation to its putative local benefits."  Id. at 318 (emphasis in original).

## III. **Discussion**

On appeal, Walgreen renews its arguments challenging the constitutionality of the Act as applied to retail pharmacies. Because Walgreen appeals the district court's decision following a bench trial, we review factual findings for clear error and conclusions of law de novo. See Keyes v. Sec'y of the Navy, 853 F.2d 1016, 1020 (1st Cir. 1988).

The Constitution grants Congress the power to regulate interstate commerce. See U.S. Const. art. I, § 8, cl. 3. While the Commerce Clause's text provides only an affirmative grant of power, for over 150 years, the Clause has been interpreted to contain a negative aspect known as the dormant Commerce Clause. See Laurence H. Tribe, 1 American Constitutional Law 1030 (3d ed. 2000) (citing Cooley v. Bd. of Wardens, 53 U.S. 299, 317-20 (1852)). The dormant Commerce Clause doctrine, which applies to Puerto Rico on the same terms as it applies to the states, see United Egg Producers v. Dep't of Agric. of P.R., 77 F.3d 567, 569 (1st Cir. 1996), limits the power of states "to erect barriers against interstate trade," Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35 (1980); see also Doran v. Mass. Turnpike Auth., 348 F.3d 315, 318 (1st Cir. 2003).

Under the dormant Commerce Clause, if a state law has either the purpose or effect of significantly favoring in-state commercial interests over out-of-state interests, the law will "routinely" be invalidated "unless the discrimination is

-9-

demonstrably justified by a valid factor unrelated to economic protectionism." Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999) (quoting West Lynn Creamery, Inc. v. Healy, 512 U.S. 189, 192-93 (1994)). If the state law regulates in-state and out-of-state interests evenhandedly, the statute will be upheld "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

While these rules are easy to recite, their application to a particular factual setting is often difficult. Recognizing this difficulty, the Supreme Court has cautioned that the dormant Commerce Clause inquiry should be undertaken by "eschew[ing] formalism for a sensitive, case-by-case analysis of purposes and effects." West Lynn Creamery, 512 U.S. at 201. With these principles in mind, we consider whether Puerto Rico's certificate of need law, as applied to retail pharmacies, discriminates against interstate commerce.

On its face, the Act applies neutrally. All commercial interests wishing to open or relocate a pharmacy in Puerto Rico must obtain the same certificate no matter their place of origin. But viewed more critically and in light of the Secretary's enforcement of the Act, the Act discriminates against interstate commerce by permitting the Secretary to block a new pharmacy from locating in

its desired location simply because of the adverse competitive effects that the new pharmacy will have on existing pharmacies.

As set forth above, when the Puerto Rico legislature amended the Act in 1979 to include pharmacies as covered "health care facilities," it exempted all existing pharmacies from the certificate requirement. 24 L.P.R.A. § 334g. Of the pharmacies operating in Puerto Rico at this time, ninety-two percent were locally owned. Thus, the Act, as amended, excused an almost entirely local class of pharmacies from the certificate requirement. Cf. Pac. Northwest Venison Producers v. Smitch, 20 F.3d 1008, 1013 (9th Cir. 1994) (recognizing that "grandfather clause" exempting in-state interests can indicate discriminatory nature of statute) (citing Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 447 (1978)).

What's more (again as set forth above) this group of existing pharmacies not only was excused from the certificate requirement but also has been permitted to wield substantial influence in the enforcement of the certificate requirement against proposed new pharmacies. The Secretary acknowledges that, unless an existing pharmacy objects to a certificate request, he almost invariably issues the certificate. Yet when there is an objection, he begins the costly and time-consuming administrative and judicial procedures established by the Act and frequently declines to issue requested certificates at the conclusion of the process.

-11-

Thus, in practice, the Act permits an existing pharmacy to object simply because it fears additional competition. And this practice is not only within the letter of the Act, it is within its spirit as well. The Act provides that the Secretary may deny a certificate if a new pharmacy will "unduly affect existing services." 24 L.P.R.A. § 334(e). Moreover, the regulations enforcing the Act direct the Secretary to reject a new pharmacy's request if the proposed location is already "saturated" with existing pharmacies. Regulation No. 56, art. VI § 13(2). The law is thus protectionist both de jure and de facto.

This protectionist regime has had discriminatory effects. While the Secretary has rejected virtually no unopposed applications,[3] twenty-three percent of opposed applications have been denied. The negative effects on out-of-Commonwealth applicants have been particularly pronounced. Over fifty percent of out-of-Commonwealth entities have been forced to undergo the entire administrative process compared to less than twenty-five percent of local applicants. Moreover, of those applicants forced to endure the hearing process, the Secretary has granted certificates to ninety percent of the local applicants but only to fifty-eight percent of out-of-Commonwealth applicants. In 1979, ninety-two percent of pharmacies were under local ownership, and in 2001,

---

[3]Out of the 337 unopposed applications, only one has been rejected.

ninety-four percent of pharmacies were locally owned. The statistical evidence thus strongly indicates that the Act, as applied by the Secretary, has limited competition in favor of the predominantly local group of existing pharmacies.

The Supreme Court has invalidated, on dormant Commerce Clause grounds, regulatory schemes that permit a state to deny an operating license on the basis that the opening of a new facility in a particular location will cause undue competition for existing facilities.[4] See H.P. Hood & Sons, Inc. v. DuMond, 336 U.S. 525, 545 (1948) (invalidating state agency's refusal to grant a license for a milk producer to operate in a desired locality because the relevant market was "already adequately served"); Buck v. Kuykendall, 267 U.S. 307, 314-16 (1925) (invalidating a rule that a state could deny an interstate transporter a certificate of necessity and convenience to use state roads because the "area is already being adequately served"); George W. Bush & Sons Co. v. Malloy, 267 U.S. 317, 318 (1925) (similar); see also Medigen of Ky.

---

[4]This is not to say that there are no instances in which a state could justify a certificate of need law that restricts competition, see, e.g., Panhandle E. Pipe Line Co. v. Mich. Pub. Serv. Comm'n, 341 U.S. 329, 333-34 (1951); Am. Motor Sales Corp. v. Div. of Motor Vehicles, 592 F.2d 219, 222-23 (4th Cir. 1979); however, certificate of need laws which deter competition simply to benefit those entities already operating within a state are not legitimate exercises of state power, see Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978) (stating that laws which have a disproportionately negative impact on out-of-state businesses and serve only to promote "economic protectionism" are "per se" invalid).

v. Pub. Serv. Comm'n of W. Va., 787 F. Supp. 590, 598 (S.D. W. Va. 1991) (collecting cases invalidating various certificate of convenience and necessity schemes because they discriminate against interstate commerce), aff'd 985 F.2d 164 (4th Cir. 1993).  A court has also struck down, on dormant Commerce Clause grounds, a law which gave in-state interests the ability to manipulate a facially neutral regulatory scheme to establish advantages over out-of-state interests.  See McNeilus Truck & Mfg. v. Ohio, 226 F.3d 429, 442-43 (6th Cir. 2000) (holding that facially neutral scheme which gave established local interests the ability to block licensing of out-of-state entities by refusing to contract with them had the effect of discriminating against interstate commerce).

The Act, insofar as it applies to pharmacies, suffers from both of these infirmities.  It permits the Secretary to deny a proposed pharmacy market access at its desired location simply to limit competition.  Further, the Secretary invokes this authority only upon the urging of a member of the largely local group of existing pharmacies, thereby permitting a predominantly local group to manipulate the regulatory scheme for its own advantage.  For these reasons, the Act discriminates against commerce by permitting established pharmacies "to retard, burden or constrict the flow of . . . commerce for their own economic advantage."  See Hood, 336 U.S. at 665.

The Secretary advances several arguments defending the Act. First, he claims that the Act does not burden commerce sufficiently to trigger the dormant Commerce Clause doctrine because it does not bar any out-of-Commonwealth pharmacy from operating in Puerto Rico. He contends that the Act is permissible because every pharmacy can open somewhere on the island.

This argument takes too narrow a view of the kind of restrictions that affect the flow of commerce. Laws may implicate the Commerce Clause if they ban a business from establishing operations in only one part of a state, even though the rest of the state remains open. See Dean Milk Co. v. Madison, 340 U.S. 349, 354-56 (1951) (holding invalid an ordinance which bars certain milk producers from selling milk within city limits); accord Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Resources, 504 U.S. 353, 361 (1993) ("[O]ur prior cases teach that a State may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself."). By permitting the Secretary to bar the opening of a new pharmacy in its desired location because of the competitive effects on existing pharmacies, the Act limits the parts of Puerto Rico which are open to new retail pharmacies. This burden on commerce is sufficient to trigger the Commerce Clause scrutiny.[5]

---

[5]That the Act regulates the ownership of local businesses rather than the flow of goods into the Commonwealth does not affect

Contrary to the Secretary's suggestion, the Act also cannot be defended on the ground that eats all newcomers equally and thus does not discriminate because every pharmacy seeking to open or relocate within Puerto Rico must obtain a certificate. While it is true, as the Secretary states, that a statute is consonant with the dormant Commerce Clause so long as it "leaves all comers with equal access to the local market," see Houlton Citizens' Coalition, 175 F.3d at 188, this principle has no application here.

In Houlton Citizens' Coalition, the plaintiff challenged the city's award of a contract providing the exclusive right to process the city's municipal waste. Id. at 181-82. We rejected a dormant Commerce Clause challenge to the awarding of the contract because "in-state and out-of-state bidders [were] allowed to compete freely on a level playing field" as the bidding process did not favor any particular interest. Id. at 188. But unlike the bidding process at issue Houlton Citizens' Coalition, the Act provides different "playing fields" for in and out-of-state interests. While the Act treats "newcomers" equally, it gives an on-going competitive advantage to the predominantly local group of existing pharmacies. 24 L.P.R.A. § 334g. In this crucial respect, the Act is dissimilar to the regulatory conduct challenged in Houlton Citizens' Coalition,

---

this conclusion. See Lewis, 447 U.S. at 38-39; see also Yamaha v. Jim's Motorcycle, Inc., --F.3d--, 2005 WL 628111 (4th Cir. Mar. 28, 2005) (invalidating, on dormant Commerce Clause grounds, state law which regulated the ownership of local motorcycle franchises to prevent excessive competition with existing franchises).

and is akin to laws which courts have invalidated because they discriminate against out-of-state entities and some in-state entities in order to favor a subset of in-state interests. See C&A Carbone, Inc. v. Clarkstown, 511 U.S. 383, 391 (1994) ("The ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition."); Dean Milk Co., 340 U.S. at 354 n.4 (holding that it is "immaterial that Wisconsin milk from outside the Madison area is subjected to the same proscription as that moving in interstate commerce"); Cloverland-Green Spring Dairies, Inc. v. Penn. Milk Mktg. Bd., 298 F.3d 201, 214 (3d Cir. 2002) (noting that a statute may be invalid under the dormant Commerce Clause "if it favors only a single or finite set of businesses") (internal citations and quotations omitted).

In a variant on the Secretary's theme that "the Act treats all newcomers equally," the Secretary emphasizes that all "newcomers" must file an application for a certificate, even though only the opposed pharmacies must go through "the whole nine yards" of the administrative process. This argument misconceives the fundamental flaw in the Act. The Act and accompanying regulations permit the Secretary to reject an application on the ground that a particular area of Puerto Rico is saturated with existing pharmacies. The result of this authority is that the Secretary protects the mostly local group of existing pharmacies from competitive pressure. That the Secretary subjects all newcomers

-17-

to this discriminatory scheme does not ameliorate the constitutional infirmity.

Our conclusion is also unaffected by the fact that a few of the existing pharmacies when the Act was passed (and now) are owned by out-of-Commonwealth interests. Holding otherwise would be tantamount to saying that a favored group must be entirely in-state for a law to have a discriminatory effect on commerce. The Secretary cites no authority for this proposition, and our precedent suggests otherwise.

In Nat'l Revenue Corp. v. Violet, 807 F.2d 285 (1st Cir. 1986), we considered a dormant Commerce Clause challenge to a Rhode Island statute providing that only members of the Rhode Island bar could engage in third-party debt collection. Rhode Island defended the law by arguing that it applied evenhandedly because it excluded all debt collection companies from operating within its borders. Id. at 290. We rejected this argument because the statute "effectively bars out-of-staters from offering a commercial service . . . and confers the right to provide th[e] service . . . upon a class largely composed of Rhode Island citizens" (i.e., members of the Rhode Island bar). Id. Even though some members of the Rhode Island bar were from outside of Rhode Island,[6] we concluded that the statute discriminated against commerce because it favored a class

---

[6]States are not permitted to limit bar entry to their own citizens. See Supreme Court of N.H. v. Piper, 470 U.S. 274, 283 (1985).

-18-

comprised _mostly_ of Rhode Island interests.  See _Nat'l Revenue_, 807 F.2d at 290.  So too here.  While a few out-of-Commonwealth pharmacies benefit from the Act, the vast majority of favored pharmacies are local concerns.

Finally, we disagree with the Secretary's suggestion that this case is controlled by _Exxon Corp._ v. _Governor of Md.,_ 437 U.S. 117 (1978).  In _Exxon_, the Court considered the validity of a Maryland statute prohibiting refiners of petroleum from operating retail service stations within Maryland.  _Id._ at 120.  The Court rejected the refiners' dormant Commerce Clause challenge because the statute did not affect the right of only out-of-state entities to compete in the Maryland market; rather, all independent dealers (in and out-of-state) were permitted to compete and _all_ refiners were excluded.  See _id._ at 127.  As the Court explained: "While the refiners will no longer enjoy their same status in the Maryland market, in-state independent dealers will have no competitive advantage over out-of-state dealers.  The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish discrimination against interstate commerce." _Id._ at 127.

This case is distinguishable because, as we have explained, the Act favors the largely local group of established pharmacies over similarly-situated out-of-Commonwealth pharmacies seeking to open new stores.  Unlike _Exxon_, where the Court expressed

-19-

confidence that the only result of the statute would be to "cause some business to shift from one interstate supplier to another," the statistics in this case strongly suggest that the Act helps to perpetuate local dominance of the Puerto Rico pharmacy market. Id. at 128; see also supra at 12-13. The Act does not burden a particular firm, or subgroup of firms, but rather affects every pharmacy seeking to open in an area of Puerto Rico where an established pharmacy already operates.

We thus find that, on balance, the Act, though facially neutral, discriminates against interstate commerce. This conclusion, however, does not end our inquiry. "When discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interest at stake." Hunt v. Wash. Apple Adver Comm'n, 432 U.S. 333, 353 (1977). The only justification offered by the Secretary for the Act is that it "seeks to encourage in-state and out-of-state [interests] alike to establish pharmacies in [underserved] geographical areas."

There is no dispute that the Commonwealth has a legitimate interest in encouraging pharmacies to locate in all parts of Puerto Rico. But, as the parties' experts testified, the certificate requirement cannot reasonably be thought to advance this purpose. Pharmacies seek to operate in areas where they can turn a profit.

-20-

The refusal to grant a proposed pharmacy market entry at its desired location will not encourage the proposed pharmacy to relocate to an underserved area (unless the government provides other incentives for it to do so). Presumably areas are underserved because pharmacies have determined that these locations are unlikely to be profitable. For this reason, the denial of a certificate request is likely to lead a pharmacy to seek to open in another potentially profitable (and therefore probably already served) area or to withdraw from the Puerto Rico market entirely. As the Fourth Circuit explained in a similar case, "the goal of providing universal service at reasonable rates may well be a legitimate state purpose, but restricting market entry does not serve that purpose." Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va., 985 F.2d 164, 167 (4th Cir. 1993) (invalidating, on dormant Commerce Clause grounds, a statute requiring transporters of medical waste to obtain a certificate of necessity and convenience and authorizing the state agency to deny such certificates if "existing services . . . [are] reasonably efficient and adequate").

## IV. Conclusion

For the foregoing reasons, 24 L.P.R.A. §§ 334 et seq., as enforced by the Secretary of Health for the issuing of certificates of necessity and convenience to retail pharmacies, is invalid under the dormant Commerce Clause. Accordingly, we **reverse** the district

court's judgment and **remand** for further proceedings consistent with this opinion.