# United States Court of Appeals
## For the First Circuit

---

No. 00-2585

RASAC OLUFEMI OPERE,

Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Circuit Judge,

Gibson,[*] Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Joseph F. Dugan, on brief for petitioner.
Nelda C. Reyna, with whom Stuart E. Schiffer, Acting Assistant Attorney General and David V. Bernal, Assistant Director, were on brief for respondent.

---

October 2, 2001

---

[*] Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** Rasac Olufemi Opere, a native and citizen of Nigeria, was admitted to the United States on November 13, 1982 as a nonimmigrant visitor with authorization to remain in the country until November 30, 1982. Having remained in the United States beyond the authorized date, Opere was given an Order to Show Cause ("OSC") by the INS on April 14, 1994 and was charged as being deportable pursuant to Immigration and Nationality Act ("INA") § 211(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (current version at 8 U.S.C. § 1227(a)(1)(B)). In the deportation proceedings before an immigration judge, Opere admitted all allegations contained in the OSC and conceded deportability. For relief from deportation, Opere applied for suspension of deportation and sought voluntary departure and termination of proceedings. The immigration judge denied the relief, finding that because he had previously lied under oath to an immigration official during a green card interview, Opere was statutorily precluded from demonstrating good moral character as required for a suspension of deportation. The Board of Immigration Appeals ("Board") upheld the immigration judge's decision, and this appeal followed.

## FACTS

On June 7, 1993, Opere married Alana Rose, a United States citizen. By December of that year, they were separated and not living together: Opere was living at 53 Pine Street and Alana was living with

her sister. On December 27, 1993, Alana filed a Petition for Alien Relative, commonly referred to as a "green card," for Opere based on their marriage. Alana and Opere were interviewed under oath, together and individually, on February 28, 1994 by Immigration Officer Higgins. During that interview, Opere and Alana each told Higgins that they were living together at 53 Pine Street. Alana, however, later recanted and, on February 28, 1994, withdrew the green card petition on the basis that she and Opere were in fact separated as of December 1993. The INS subsequently denied the petition.

During his deportation proceeding before the immigration judge, Opere testified about his marriage interview with Officer Higgins. Opere testified that at the beginning of the interview, he was placed under oath. When asked by counsel for the government why he had falsely testified that he and Alana were living together, Opere stated, "I was afraid I want everything to work together, and I know if I tell him we were not living together, I don't know what he is going to -- I lied." Counsel for the government then asked whether he lied because he thought Higgins would deny the green card if he knew that Opere and his wife were not living together. Opere answered, "Yes."

In a decision dated July 20, 1995, the immigration judge found Opere deportable as charged, denied his application for suspension of deportation and his request for termination of proceedings and voluntary departure, and ordered him deported to

-4-

Nigeria. In evaluating the requirements under the INA for suspension of deportation, the immigration judge found that Opere had established seven years of continuous physical presence, but was unable to demonstrate that he was a person of good moral character and that deportation would result in extreme hardship to either himself or his estranged wife. With respect to her determination regarding good moral character in particular,[1] the judge found that Opere was statutorily precluded under INA § 101(f)(6) from receiving suspension of deportation proceedings because he lied under oath to an immigration officer during the time period in which he was required to demonstrate good moral character.

Opere appealed the immigration judge's decision to the Board on July 24, 1995. In his appeal, Opere argued that he did not provide false testimony within the meaning of § 101(f)(6) because he effectively "recanted" the untruthful testimony when his wife admitted that they were not residing together and because the testimony itself was not material. The Board rejected both of these arguments on the grounds that it was Opere's wife, not Opere, that had recanted that false testimony and that § 101(f)(6) does not impose a materiality requirement. The Board considered Opere's admission that he lied to the immigration officer because he was afraid that his green card would be denied and found that Opere "plainly had the subjective belief that

---

[1] The decision on this ground is the only issue presented on appeal.

-5-

his false statement would assist him in obtaining immigration benefits." The Board thus concluded that Opere was statutorily barred by § 101(f)(6) from establishing that he was a person of good moral character and dismissed his appeal for a suspension of deportation.[2]

## DISCUSSION

The law in this case is straightforward. The granting of an application for suspension of deportation under the INA requires a finding of statutory eligibility as well as an exercise of agency discretion. Bernal-Vallejo v. INS, 195 F.3d 56, 60-61 (1st Cir. 1999). An alien is statutorily eligible for deportation if he: (1) has been physically present in the United States for a continuous period of not less than seven years immediately preceding the application for suspension; (2) is a person of "good moral character"; and (3) is "a person whose deportation would, in the opinion of the Attorney general, result in extreme hardship to the alien or to her spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (repealed 1996).[3] Section 101(f) of the Act, in turn, identifies eight categories of conduct that render an individual per se lacking in good moral character. Because a decision to deny suspension

---

[2] The Board sustained Opere's appeal for voluntary departure.

[3] Though repealed, this provision still applies to this case. See Bernal-Vallejo, 195 F.3d at 60 n.1.

of deportation on these grounds is a non-discretionary question of fact, we review it for "substantial evidence."  Under this standard, the Board's determination "must be upheld if 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" Mendes v. INS, 197 F.3d 6, 13 (1st Cir. 1999) (citing INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)).

Here, the immigration judge found Opere statutorily ineligible for suspension of deportation based on § 101(f)(6).  This category provides that:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is to be established, is, or was . . . one who has given false testimony for the purpose of obtaining any immigration benefits.

INA § 101(f)(6), 8 U.S.C. 1101(f)(6).  "Testimony," for purposes of § 101(f)(6), includes any statement made under oath.  Kungys v. United States, 485 U.S. 759, 781 (1988).  If an individual makes such statements with the "subjective intent of obtaining immigration benefits," he or she is statutorily precluded from establishing good moral character under this provision.  Id.

Opere does not contest that his marriage interview took place within the relevant time period, namely, seven years.  In his testimony before the immigration judge, moreover, Opere testified that he was placed under oath at the beginning of that interview, that he lied

about his living arrangements, and that he did so out of fear that if he told the truth, he would be denied a green card. Opere argues, as he did below, that the government failed to establish that his false testimony was material. However, as the Board correctly concluded, § 101(f)(6) imposes no materiality requirement. Id. at 779-80. Rather, the provision "denominates a person to be of bad moral character on account of having told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." Id. Accordingly, we believe there is sufficient evidence in the record to uphold the Board's determination that Opere was statutorily ineligible from establishing good moral character for a suspension of deportation.

Opere raises two additional arguments on appeal. First, Opere states that the government offered no evidence establishing that he was actually under oath when he lied. He also claims that he lied because he was surprised by Officer Higgins' confrontation, not because he believed that it would enhance his chances of securing a green card. In addition to contradicting his own testimony before the immigration judge, these arguments were never raised before the Board. They are consequently waived for failure to exhaust administrative remedies. See Bernal-Vallejo, 195 F.3d at 64.

The decision of the Board is **affirmed**.